IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY CARDENAS, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>B. S. EDWARDS, et al.,<br><br>Defendants. | No. 2:19-CV-0691-TLN-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion for summary judgement, ECF No. 75. Also before the Court are Defendants' motion for terminating sanctions, ECF No. 71, based on Plaintiff's failure to comply with a prior discovery order, as well as Defendants' motion to strike, ECF No. 80, various portions of Plaintiff's oppositions to their motion for summary judgment. For the reasons discussed below, the Court finds that, even considering the evidence to which Defendants object, summary judgment in Defendants' favor is appropriate. For this reason, the Court also finds it unnecessary to address whether this action should be dismissed as an appropriate sanction for failure to comply with a discovery order.

///
///
///

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

1  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the
2  claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions
3  of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.
4  　　　　　In resolving the summary judgment motion, the court examines the pleadings,
5  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.
6  See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson,
7  477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the
8  court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.
9  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
10 produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
11 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
12 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the
13 judge, not whether there is literally no evidence, but whether there is any upon which a jury could
14 properly proceed to find a verdict for the party producing it, upon whom the onus of proof is
15 imposed." Anderson, 477 U.S. at 251.

### I. PLAINTIFF'S ALLEGATIONS

18 　　　　　Plaintiff, Mr. Danny Cardenas, names the following as Defendants in the operative
19 second amended complaint: (1) Mr. B. S. Edwards and (2) Mr. C. Brooks. See ECF No. 18, pg.
20 1. Plaintiff alleges Eighth Amendment claims against each defendant. See ECF No. 18, pgs. 1-
21 3. Plaintiff contends that Defendant Edwards failed to provide a secure and safe environment to
22 perform CPR on Plaintiff "during an activated active alarm." Id. at 1. According to Plaintiff,
23 Defendant Edwards "left inmate Davis. . . to proform [sic] CPR when it wasn't the job of a [sic]
24 inmate to proform [sic] a C/O duties." Id. Plaintiff claims Defendant Edwards violated his right
25 to be free from cruel and unusual punishment by failing to perform CPR. See id. Somewhat
26 curiously, Plaintiff also asserts that Defendants' response to his medical emergency constituted
27 cruel and unusual punishment as Defendants allowed inmate Davis to perform CPR even though
28 a "do not resasatate [sic] is part of medical file." Id. at 1. Thus, on the one hand, Plaintiff

accuses Defendants of deliberate indifference for not performing CPR and, on the other hand, accuses Defendants of deliberate indifference for allowing CPR to be performed.

## II. THE PARTIES' EVIDENCE

### A. **Defendants' Motion**

Defendants' motion for summary judgment is supported by the sworn declarations of C. Brooks, ECF No. 75-2, Deputy Attorney General Colin D. Smithey, ECF No. 75-3, and B.S. Edwards, ECF No. 75-4, as well as various attached thereto.  In addition, Defendants submitted a request for judicial notice (RJN) in support of their motion for summary judgment, ECF No. 75-5, and a notice of lodging of copies of deposition transcripts in compliance with Eastern District of California Local Rule 133(j), ECF No. 75-7.  In the RJN, ECF No. 75-5, Defendants ask the Court to take judicial notice of Exhibits A, B, C, and H attached to the Smithey declaration, which consist of the pleadings in this case.[1]

Defendants rely on the following exhibits attached to the declarations of Brooks, Smithey, and Edwards:

| | | |
|---|---|---|
| Brooks Exhibit A | Crime/Incident Report, Part C – Staff Report, completed by Defendant Brooks.  ECF No. 75-2, pgs. 3-6. | |
| Smithey Exhibit A | Plaintiff's Complaint and attachments.  ECF No. 75-3, pgs. 4-29. | |
| Smithey Exhibit B | Plaintiff's Original Complaint.  ECF No. 75-3, pgs. 30-83. | |
| Smithey Exhibit C | Plaintiff's Second Amended Complaint (SAC). ECF No. 75-3, pgs. 84-87. | |
| Smithey Exhibit D | Excerpts of Plaintiff's Deposition, Volume II, taken on June 24, 2021.  ECF No. 75-3, pgs. 88-101. | |
| Smithey Exhibit E | Excerpts of Davis Deposition Davis, taken on November 9, 2020.  ECF No. 75-3, pgs. 102-117. | |
| Smithey Exhibit F | Request for Admissions to Plaintiff, Set One. ECF No. 75-3, pgs. 118-28. | |

---

[1] The Court recommends Defendants RJN be granted.  See Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967).

4

| | | |
|---|---|---|
| | Smithey Exhibit G | Defense counsel's letter to Plaintiff, dated December 17, 2020, regarding Plaintiff's failure to respond to written discovery.  ECF No. 75-3, pgs. 129-33. |
| | Smithey Exhibit H | Defendants' answer to Plaintiff's SAC.  ECF No. 75-3, pgs. 134-46. |
| | Edwards Exhibit A | Crime/Incident Report, Part C – Staff Report, completed by Defendant Edwards.  ECF No. 75-4, pgs. 3-6. |

In support of their motion for summary judgment, Defendants have also filed a statement of undisputed facts, ECF No. 75-6, in which they assert the following facts are established:

1.   Facts Related to the March 2, 2019, Incident

At all relevant times, Plaintiff was an inmate at CMF and Defendants Brooks and Edwards were Correctional Officers at CMF.  See id. at 2.  On March 2, 2019, Defendants were working at CMF when they heard a voice yelling "man down, dorm 1."  Id.  Defendants immediately responded and observed Plaintiff lying on his bed nonresponsive.  See id. at 3.  At the time, another inmate – Davis – was performing CPR on Plaintiff.  See id.  Defendant Brooks activated her personal alarm and announced a medical emergency over the institutional radio.  See id.  Defendant Edwards began performing CPR while Defendant Brooks left to retrieve emergency medical equipment.  See id.  When Defendant Brooks returned, Defendant Edwards and Davis were still performing CPR on Plaintiff.  See id.

Registered Nurses Staublitz and Purtell arrived on the scene, stopped Edwards and Davis from continuing with CPR, and administered two doses of Narcan to Plaintiff.  See id.  Defendant Edwards then assisted other staff in placing Plaintiff on a gurney and escorted Plaintiff to the B-1 emergency room.  See id.  Defendants had no further involvement in the incident, which lasted approximately five minutes.  See id.

/ / /

/ / /

/ / /

/ / /

1    In additional to the foregoing, which is supported by the various exhibits attached
2 to the Brooks, Edwards, and Smithey declarations, Defendants cite portions of Plaintiff's
3 deposition as follows:

> Q: Okay. Do you have any kind of training or education in healthcare?
>
> A: No.
>
> Q: Or any type of medicine or nursing training?
>
> A: I just told you my last school was the G – I mean fourth grade.
>
> Q: All right. Are you CPR certified, sir?
>
> A: I don't know anything about any of that stuff. I don't do medicine. I'm not doctor. I don't have degrees.

ECF No. 75-3, Ex. D, at Volume 2 of Deposition of Danny Cardenas, Jr. (Cardenas Depo.) at pgs. 26:19-27:3, June 24, 2021.

* * *

> Q: Okay. So the incident that we're here to discuss, do you remember what facility you were located at when it happened?
>
> A: No, I don't. It's been so long.

Id. at pgs. 27:21-28:8.

* * *

> Q: Okay. As you sit here today, sir, do you know the names of the correctional officers that you filed the lawsuit against?
>
> A: I believe it was Brooks and Edwards. Yeah, I haven't been doing – somebody's been talking to me so I don't know a lot of what's been said.
>
> Q: And I understand. And if you don't know, that's fair. Just tell me. But I'm hoping you will remember some of this. Okay. Do you know the date the incident happened, sir?
>
> A: I don't remember any of that stuff.
>
> Q: Do you remember the year?
>
> A: I forgot.
>
> Q: Would it refresh your recollection if I mentioned the year 2019?

1    A:   It could be so.

2    Q:   All right. So I'll represent to you that the incident happened at California Medical Facility on March 2, 2019. Do you remember where in the facility you were located when the incident happened?

3

4    A:   I don't remember. I just told you I don't remember all that stuff.

5

6    Q:   I understand. I understand. But maybe we can remember some of the stuff leading up to it at least.

7    A:   No, I don't remember any of that stuff. Don't even remember the incident.

8

9    Q:   Okay. Because I have, sir, your complaint which indicates that you were at the facility and you lost consciousness.

10   A:   Okay.

11   Id. at pgs. 28:9-29:15.

12                     * * *

13   A:   Yeah, everything that is written was somebody telling me what happened and then the reports that they read from when they tried to take me to court.

14

15   Q:   Okay. But you yourself don't remember that?

16   A:   No. I wasn't even – I don't remember.

17   Id. at pg. 30:17-21.

18                     * * *

19   Q:   I really do appreciate your patience. All right. Do you have any memory as you sit here today of any thoughts of hurting yourself on the day of the incident?

20

21   A:   I don't remember.

22   Id. at pg. 44:4-9.

23                     * * *

24   Q:   All right. Do you have any memory as you sit here today?

25   A:   No, I don't.

26   Id. at pg. 45:17-19.

27   ///

28   ///

Regarding the underlying incident, Defendants also note their various requests for admissions, to which Plaintiff never responded. See ECF No. 75-6, pgs. 5-6. Specifically, Plaintiff was asked to admit the following:

> Plaintiff is not aware of any facts, witnesses, or documents to support his claims against Defendant Brooks. See id. at 5.
>
> Plaintiff is not aware of any facts, witnesses, or documents to support his claims against Defendant Edwards. See id. at 10.
>
> Defendant Edwards administered chest compressions on March 2, 2019. See id.
>
> Plaintiff was administered multiple doses of medication on March 2, 2019. See id. at 5, 10.
>
> On March 2, 2019, Defendant Brooks announced the medical emergency over the institutional radio. See id.
>
> On March 2, 2019, Defendant Brooks activated her personal alarm. See id. at 6
>
> On March 2, 2019, Defendant Brooks retrieved emergency medical equipment, specifically an ambulatory bag containing a breathing apparatus. See id.
>
> Plaintiff received all necessary and reasonable emergency medical assistance on March 2, 2019. See id. at 10.

        2.       Facts Related to Exhaustion of Administrative Remedies

On March 6, 2019, Plaintiff submitted a form 602 inmate grievance. See ECF No. 75-6, pg. 3. Plaintiff claims that Defendant Edwards failed to provide life-saving treatment. See id. at 3-4. The grievance was bypassed at the first level of review and screened at the second level. See id. at 4. At the second level, Plaintiff's grievance was rejected because Plaintiff failed to demonstrate an adverse effect upon his welfare. See id. Plaintiff was advised that, while he could not appeal the second-level decision, he could take corrective action and re-submit the grievance within a specified timeframe. See id. Plaintiff was further advised that, if the appeal was cancelled for failure to re-submit upon taking corrective action, the appeal cannot later be re-submitted, but the cancellation decision could itself be appealed. See id.

///

///

There is no evidence that Plaintiff's grievance was ever reviewed at the third and final level of the prison administrative process. See id. Finally, the original grievance submitted by Plaintiff concerning the incident on March 2, 2019, never mentioned Defendant Brooks. See id.

### B. Plaintiff's Opposition

Plaintiff's opposition to Defendants' motion for summary judgement asserts that there are genuine issues of disputed facts. See ECF Nos. 77, 78. Because Plaintiff is pro se, the Court "must consider as evidence in his opposition to summary judgment all of [the] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

Within his opposition, Plaintiff asserts that the claims against Defendants Edwards and Brooks are not barred because Defendants engaged in "a direct assault." See ECF No. 77, pg. 1. Plaintiff does not offer any evidence related to this assertion. See id. While Plaintiff makes no mention of any Eighth Amendment claim in his opposition, Plaintiff introduces an entirely new set of claims against Defendants, including but not limited to a retaliation claim and a due process claim. See id. Plaintiff further contends in a second filed opposition to Defendants' motion for summary judgment that Plaintiff had supplied the Court with "proof of all [his] injuries and all the pain and suffering." See ECF No 78, pg. 4. Plaintiff does not, however, cite to any evidence to support his claim and did not attach any documentation to his second filed opposition. See id. Plaintiff goes on to claim that Defendant Brooks drugged him "buy [sic] sending another inmate to deliver [Plaintiff] T.H.C. Gummies." See id. at 3. Again, Plaintiff does not cite to any evidence to support this newly introduced claim and does not link it to the original Eighth Amendment claims alleged in the operative SAC. See id.

///

///

///

9


Finally, Plaintiff asserts that Defendants actions constituted "crule [sic] and unusual conduct." See ECF No. 78, pg. 5. Plaintiff cites to no evidence to support the contention. See id. Plaintiff admits that he did rely on reports provided by Defendants to create his oppositions. See id. at 2-3. Plaintiff's complaint is unverified and Plaintiff has filed no evidence in opposition to Defendants' motion.

Defendants have filed objections to Plaintiff's opposition filings. See ECF No. 80. Defendants ask the Court to strike certain portions of these filings. See id.

## III. DISCUSSION

In their motion for summary judgment, Defendants argue they are entitled to judgment as a matter of law because: (1) Plaintiff failed to exhaust available administrative remedies prior to filing suit; and (2) Plaintiff cannot prevail on his Eighth Amendment claims; and (3) Defendants are entitled to qualified immunity. Because, for the reasons discussed below, the Court finds Defendants' first two arguments persuasive, the Court does not address qualified immunity.

### A. **Failure to Exhaust Administrative Remedies**

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the

PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The defendant bears burden of showing non-exhaustion in the first instance. See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014). If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted, prolonged, or inadequate. See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94. When reviewing exhaustion under California prison regulations which have since been amended, the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on adequate notice of the problem for which the prisoner seeks redress. . . ." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (reviewing exhaustion under prior California regulations).

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7.

A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a).

Here, Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to filing suit and, therefore, summary judgment should be granted in their favor. See ECF No. 75, pgs. 13-14. The Court agrees. Based on the undisputed evidence outlined above, Plaintiff submitted his inmate grievance only through the second level of review. There is no evidence indicating that Plaintiff ever sought a decision at the third and final level. Plaintiff's claims are unexhausted as to both defendants because Plaintiff did not complete the administrative grievance process. Plaintiff's claims are also unexhausted as against Defendant Brooks, who is never mentioned in Plaintiff's inmate grievance.

### B. Medical Indifference

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

1          Defendants argue that Plaintiff cannot prevail on the merits of his Eighth
2   Amendment deliberate indifference claims because: (1) by failing to respond to requests for
3   admissions, Plaintiff has admitted that he has no factual basis for his claims; and (2) the evidence
4   shows that neither defendant was deliberately indifferent.  The Court agrees.
5          At the outset, the Court finds that Defendants' objections to Plaintiff's opposition
6   filings are well-taken because, as Defendants correctly observe, Plaintiff has raised new claims
7   and does not support any of his contentions with any evidence.  Nonetheless, in the interest of
8   justice and affording Plaintiff a full and complete opportunity to be heard, the Court will consider
9   Plaintiff's filings and recommend that Defendants' motion to strike Plaintiff's filings be denied as
10  moot.
11         Turning to the merits of Plaintiff's deliberate indifference claims the Court agrees
12  with Defendants that Plaintiff cannot prevail because, by failing to respond to Defendants'
13  requests for admissions, he has admitted all the relevant facts in Defendants' favor.  See Fed. R.
14  Civ. P. 36(a)(3); see also O'Campo v. Hardisty, 262 F.2d 621, 623-24 (9th Cir. 1958)
15  (unanswered requests for admissions may be relied upon as the basis for granting summary
16  judgment); Inland Empire Waterkeeper v. Corona Clay Co., 17 F.4th 825, 837 (9th Cir. 2021)
17  (citing Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n, 465 F.3d 1102,
18  1111-12 (9th Cir. 2006)).
19         Here, by not responding to Defendants' requests for admissions, Plaintiff admits
20  that: (1) he is not aware of any facts, witnesses, or documents to support his claims against
21  Defendants Brooks or Edwards; (2) Defendant Edwards administered chest compressions on
22  March 2, 2019; (3) Plaintiff was provided emergency medication on March 2, 2019; (4)
23  Defendant Brooks announced the medical emergency over the institutional radio and activated
24  her personal alarm on March 2, 2019; (5) on March 2, 2019, Defendant Brooks retrieved
25  emergency medical equipment, specifically an ambulatory bag containing a breathing apparatus;
26  and (6) Plaintiff received all necessary and reasonable medical assistance on March 2, 2019.
27  / / /
28  / / /

These admitted facts, which are all corroborated by Defendants' evidence, entitle Defendants to judgment in their favor as a matter of law.  To the extent Plaintiff is now in disagreement with the treatment he admits was provided by Defendants on March 2, 2019, such difference of medical opinion does not rise to actionable deliberate indifference claim.  See Sanchez v. Vild, 891 F. 2d 240, 242 (9th Cir 1989).  Where, as here, the defendants are able to show that they have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claim is properly resolved by summary judgment prior to trial.  Toguchi v. Chung, 391 F.3d 1051, 1061 (9th Cir. 2004) (quoting Jackson v. McIntosh, 90 F. 3d 330, 332 (9th Cir 1996)).

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that;

1. Defendants' motion for summary judgment, ECF No. 75, be granted; and
2. All other pending motions, ECF Nos. 71 and 80, be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 4, 2022

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE